UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SERGIO HERNANDEZ NAJERA, individually and on behalf of all other employees similarly situated,<br><br>                              Plaintiff,<br><br>        -v-<br><br><br>LAKE AVE PIZZA LLC (DBA LAKE AVENUE PIZZA) and RAYMOND DELFINO, jointly and severally,<br><br>                              Defendants. | CIVIL ACTION NO.: 21 Civ. 6753 (LGS) (SLC)<br><br>**REPORT AND RECOMMENDATION** |

**SARAH L. CAVE**, United States Magistrate Judge.

**TO THE HONORABLE LORNA G. SCHOFIELD**, United States District Judge:

### I.INTRODUCTION

In this putative collective action filed under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., New York Labor Law ("NYLL") § 650 et seq., and New York's Wage Theft Prevention Act, NYLL § 195 ("WTPA"), Plaintiff Sergio Hernandez Najera ("Hernandez"), seeks payment of unpaid wages and related relief from Defendants Lake Ave Pizza LLC (DBA Lake Avenue Pizza) ("Lake Ave") and Raymond Delfino Junior ("Delfino," with Lake Ave, "Defendants"). (ECF No. 39 (the "Amended Complaint")). Hernandez alleges that, between February 2020 and July 10, 2021, he worked for Defendants as a cook, dishwasher, and food preparer, but Defendants failed to pay him proper wages and provide legally required wage notices or statements. (Id. ¶¶ 2, 6, 18, 40, 42, 48–55, 57, 67, 74–87).

After Defendants failed to appear in this action, the Clerk of the Court entered a certificate of default. (ECF No. 53). The Honorable Lorna G. Schofield entered a default judgment and

referred the matter to me for an inquest on damages.  (ECF Nos. 66–67).  For the reasons set forth below, I respectfully recommend that the Court award Hernandez (1) compensatory damages in the amount of $21,150.00, consisting of (a) $4,080.00 in Straight Time Wages, (b) $12,060.00 in overtime wages, (c) $5,010.00 in spread-of-hours damages; (2) liquidated damages in the amount of $21,150.00; (3) prejudgment interest on Hernandez's damages for unpaid minimum, overtime, and spread-of-hours wages (i.e., $21,150.00) at a rate of nine percent per annum from the period of October 20, 2020 to the date of entry of judgment; (4) post-judgment interest pursuant to 28 U.S.C. § 1961; and (5) attorneys' fees in the amount of $5,460.00.   In addition, I respectfully recommend that, due to lack of standing, no statutory damages be awarded under the WTPA.

## II. BACKGROUND

### A.  Factual Background

Unless otherwise indicated, the facts are taken from the Amended Complaint, Hernandez's Proposed Findings of Fact and Conclusions of Law (ECF No. 72 (the "Proposed Findings")), and Hernandez's Affidavit, in which he attests to his hours worked and other facts concerning his employment with Defendants.  (ECF No. 72-1 (the "Affidavit")).  Given Defendants' default, the Court accepts as true all well-pleaded factual allegations in the Complaint, except as to damages.  See City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011) ("It is an 'ancient common law axiom' that a defendant who defaults thereby admits all 'well-pleaded' factual allegations contained in the complaint.") (quoting Vt. Teddy Bear Co. v. 1-800

Beargram Co., 373 F.3d 241, 246 (2d Cir. 2004)); Whitehead v. Mix Unit, LLC, No. 17 Civ. 9476 (VSB) (JLC), 2019 WL 384446, at *1 (S.D.N.Y. Jan. 31, 2019).[1]

Delfino operates and controls Lake Ave, a pizza parlor in Yonkers.  (ECF Nos. 39 ¶¶ 4–5, 25, 29; 72-1 ¶¶ 2–4).  Lake Ave was open from 11:00 a.m. until 10:00 p.m. seven days per week. (ECF No. 72-1 ¶¶ 10–11).  Delfino determined the wages of Lake Ave's employees, whom he hired and fired and for whom he set the work schedules and maintained records.  (ECF Nos. 39 ¶¶ 25, 29–30, 35–38; 72-1 ¶¶ 2–9)).  Defendants are joint employers and act in each other's interest with respect to their employees.  (ECF No. 39 ¶¶ 31, 33).  During the years relevant to this action, Defendants' gross annual income exceeded $500,000.00.  (Id. ¶ 27).  Defendants "rely heavily on food and produce that has been transported across state lines."  (Id. ¶ 28).

From February 2020 until July 10, 2021, Hernandez worked at Lake Ave as a food preparer, waiter, dish washer, and cook.   (ECF Nos. 39 ¶¶ 23, 39, 40; 72-1 ¶¶ 13–14, 17). Defendants directed Hernandez when to report to work.  (ECF No. 39 ¶ 41).  Hernandez worked twelve hours per day, five days per week, averaging 60 hours per week.  (ECF Nos. 39 ¶¶ 42, 49; 72-1 ¶¶ 19-20).  Defendants did not afford Hernandez breaks of any kind during his work hours. (ECF Nos. 39 ¶ 49; 72-1 ¶ 21).  Defendants paid Hernandez $12.00 per hour, in cash, for all hours that he worked, and did not pay him overtime wages for the hours he worked over 40 hours per week.  (ECF Nos. 39 ¶¶ 42, 48–50; 72-1 ¶ 19).  Defendants did not post or distribute to Hernandez notices regarding overtime and wages, nor did they give him accurate wage statements or notices of his rate of pay and regular pay day.  (ECF Nos. 39 ¶¶ 51–52, 57, 59–61, 84, 87; 72-1 ¶¶ 15–16, 22).

---

[1] Unless otherwise indicated, all internal citations and quotation marks are omitted from case citations.

B. **Procedural Background**

On August 10, 2021, Hernandez filed his initial complaint, naming Lake Ave and "Rey 'Doe', Junior" ("Doe").  (ECF No. 1 (the "Complaint")).  Lake Ave and Doe were served with the summons and Complaint on August 31, 2021 and September 9, 2021, respectively.  (ECF No. 9–10).  After Lake Ave and Doe failed to appear, the Clerk of the Court entered a certificate of default.  (ECF No. 23).  On December 15, 2021, Judge Schofield directed Hernandez to state whether he intended to proceed on the Complaint or file and serve an amended complaint, whether any legal authority existed for entering default judgment against Doe without identifying his last name, whether he had additional information about Doe, and whether Doe had been served.  (ECF No. 32).

On January 24, 2022, Hernandez filed the Amended Complaint, naming Lake Ave and substituting Delfino for Doe.  (ECF No. 39).  Lake Ave and Delfino were served with the summons and Amended Complaint on January 24, 2022 and January 25, 2022, respectively.  (ECF Nos. 44–45).  After Defendants failed to appear and defend, Judge Schofield directed Hernandez to move for default judgment, (ECF No. 52), and the Clerk of the Court again entered a certificate of default.  (ECF No. 53).  On May 4, 2022, Hernandez filed a proposed order to show cause and supporting affidavit of his counsel, attaching, inter alia, a proposed damages calculation (the "First Calculation").  (ECF Nos. 54; 55; 55-1 – 55-7).

On May 6, 2022, Judge Schofield ordered Defendants to show cause why default judgment should not be entered against them and set a hearing for June 15, 2022 (the "Hearing").  (ECF No. 56 (the "First OTSC")).  After Hernandez failed to file proof of service of the First OTSC on Defendants, Judge Schofield adjourned the Hearing to August 10, 2022.  (ECF No. 57

(the "Second OTSC")).  On June 28, 2022, Hernandez served the Second OTSC on Defendants. (ECF No. 58).  Judge Schofield adjourned the Hearing to August 17, 2022, then August 24, 2022, and then September 28, 2022.  (ECF Nos 59; 60; 61).  On September 14, 2022, Judge Schofield reiterated Defendants' obligation to appear at the Hearing, and directed Hernandez to file a proposed default judgment and serve it, along with all supporting papers and the Court's order, on Defendants.  (ECF No. 62 (the "Sept. 14 Order")).  In addition, Judge Schofield noted that the First Calculation "use[d] minimum wages applicable to New York City," despite Hernandez's allegation that he was employed in Yonkers.  (Id. at 5)  Judge Schofield warned Hernandez that failure to comply with the Sept. 14 Order would result in sanctions of $100 per day.  (Id.)  The same day, Hernandez filed and served on Defendants an updated proposed default judgment attaching a revised damages calculation (the "Second Calculation")).  (ECF Nos. 63; 63-1; 64).

On September 29, 2022, after Defendants failed to appear at the Hearing the previous day, Judge Schofield entered a default judgment awarding Hernandez judgment against Defendants "in amounts to be determined by post-default judgment inquest[,]" finding that the Amended Complaint "sufficiently pleads" claims for violation of "the minimum wage and overtime provisions of the [FLSA], the New York Minimum Wage Act and the overtime, spread-of-hours, notice and recordkeeping, and wage statement provisions of the [NYLL]."  (ECF No. 67 at 1–2 (the "Default Judgment")).  Judge Schofield further explained that the Amended Complaint:

> adequately alleges that Defendants willfully failed to pay [Hernandez] the applicable hourly rate, willfully failed to pay [him] overtime compensation, willfully failed to pay one additional hour's pay at the basic minimum wage rate before allowances for each day [his] spread of hours exceeded ten hours, and failed to provide [him] with written notice of his rate(s) of pay and/or dates of work covered by any payments received.

(Id. at 2).  That same day, Judge Schofield referred the matter to me for an inquest.  (ECF No. 66).

On September 30, 2022, the Court ordered Hernandez, by October 28, 2022, to file and serve on Defendants proposed findings of fact and conclusions of law supported by affidavit or other evidentiary material.  (ECF No. 68 (the "Scheduling Order")).  The Court also ordered Defendants, by November 7, 2022, to respond to Hernandez's submissions or contact the Court to request an in-court hearing, warning that the failure to do so would result in the issuance of a report and recommendation concerning damages based on Hernandez's submission alone.  (Id.)[2] On October 5, 2023, after Hernandez failed to file proof of service of the Scheduling Order on Defendants by the Court-ordered deadline, the Court re-directed him to do so by October 11, 2022.  (ECF No. 69).  That same day, Hernandez served the Scheduling Order on Defendants and filed proof of service on the docket.  (ECF No. 70).

On October 31, 2023, after Hernandez failed to file proposed findings of fact and conclusions of law by October 28, 2022, as required by the Scheduling Order, the Court re-directed him to do so by November 7, 2022.  (ECF No. 71).  On November 7, 2022, Hernandez filed proposed findings of fact and conclusions of law (the "Proposed Findings"), along with his own affidavit (the "Affidavit").  (ECF Nos. 72; 72-1)  Once again, Hernandez failed to file proof of service of these documents on Defendants, and once again, the Court re-directed him to do so.

---

[2] The Court warned: "IF DEFENDANTS (1) FAIL TO RESPOND TO PLAINTIFF'S SUBMISSIONS, OR (2) FAIL TO CONTACT MY CHAMBERS BY [NOVEMBER] 7, 2022, AND REQUEST AN IN-COURT HEARING, I INTEND TO ISSUE A REPORT AND RECOMMENDATION CONCERNING DAMAGES BASED ON PLAINTIFF'S WRITTEN SUBMISSIONS ALONE WITHOUT AN IN-COURT HEARING."  (ECF No. 68 at 1–2 (original emphasis)).

(ECF No. 73).  On November 15, 2022, Hernandez filed proof of service of the Proposed Findings and Affidavit on Defendants.  (ECF No. 74).[3]

To date, Defendants have not responded to any of the Court's orders or the Proposed Findings, nor have they contacted the Court to request an in-court hearing.

### III. DISCUSSION

#### A. Legal Standards

##### 1. Obtaining a Default Judgment

A party seeking a default judgment must follow the two-step procedure set forth in Federal Rule of Civil Procedure 55.  See Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC, 779 F.3d 182, 186–87 (2d Cir. 2015); Fed. R. Civ. P. 55.  First, under Rule 55(a), where a party has failed to plead or otherwise defend in an action, the Clerk of the Court must enter a certificate of default.  See Fed. R. Civ. P. 55(a).  Second, after entry of the default, if the party still fails to appear or move to set aside the default, the Court may enter a default judgment.  See Fed. R. Civ. P. 55(b).  Whether to enter a default judgment lies in the "sound discretion" of the trial court.  Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993).  Because a default judgment is an "extreme sanction" that courts are to use as a tool of last resort, Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981), the district court must "carefully balance the concern of expeditiously adjudicating cases, on the one hand, against the responsibility of giving litigants a chance to be heard, on the other."  Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d 19, 29 (E.D.N.Y. Mar. 19, 2015) (citing Enron, 10 F.3d at 96).

---

[3] Without explanation, on December 7, 2022, Hernandez refiled and re-served the Proposed Findings and Affidavit.  (ECF Nos. 75; 76).  The Court cites only to the Affidavit at ECF No. 72-1).

In considering whether to enter a default judgment, district courts are "guided by the same factors [that] apply to a motion to set aside entry of a default." First Mercury Ins. Co. v. Schnabel Roofing of Long Is., Inc., No. 10 Civ. 4398 (JS) (AKT), 2011 WL 883757, at *1 (E.D.N.Y. Mar. 11, 2011). "These factors include: (1) whether the default was willful; (2) whether ignoring the default would prejudice the opposing party; and (3) whether the defaulting party has presented a meritorious defense." J & J Sports Prods. Inc. v. 1400 Forest Ave. Rest. Corp., No. 13 Civ. 4299 (FB) (VMS), 2014 WL 4467774, at *4 (E.D.N.Y. Sept. 10, 2014) (citing Swarna v. Al-Awadi, 622 F.3d 123, 142 (2d Cir. 2010)); see Enron, 10 F.3d at 96 (noting that "[a]lthough the factors examined in deciding whether to set aside a default or a default judgment are the same, courts apply the factors more rigorously in the case of a default judgment because the concepts of finality and litigation repose are more deeply implicated in the latter action").

### 2. **Determining Liability**

A defendant's default is deemed "a concession of all well-pleaded allegations of liability," Rovio Entm't, Ltd. v. Allstar Vending, Inc., 97 F. Supp. 3d 536, 545 (S.D.N.Y. 2015), but a default "only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendants." Gesualdi v. Quadrozzi Equip. Leasing Corp., 629 F. App'x 111, 113 (2d Cir. 2015). The Court must determine "whether the allegations in [the] complaint establish the defendants' liability as a matter of law." Id. If the Court finds that the well-pleaded allegations establish liability, the Court then analyzes "whether plaintiff has provided adequate support for [his requested] relief." Gucci Am., Inc. v. Tyrrell-Miller, 678 F. Supp. 2d 117, 119 (S.D.N.Y. 2008). If, however, the Court finds that the complaint fails to state a claim on which relief may be granted, the Court may not award damages, "even if the post-default inquest

submissions supply the missing information." Perez v. 50 Food Corp., No. 17 Civ. 7837 (AT) (BCM), 2019 WL 7403983, at *4 (S.D.N.Y. Dec. 4, 2019), adopted by, 2020 WL 30344 (S.D.N.Y. Jan. 2, 2020).

### 3. Determining Damages

Once liability has been established, the Court must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." Am. Jewish Comm. v. Berman, No. 15 Civ. 5983 (LAK) (JLC), 2016 WL 3365313, at *3 (S.D.N.Y. June 15, 2016), adopted by, 2016 WL 4532201 (S.D.N.Y. Aug. 29, 2016). A plaintiff "bears the burden of establishing [its] entitlement to recovery and thus must substantiate [its] claim with evidence to prove the extent of damages." Dunn v. Advanced Credit Recovery Inc., No. 11 Civ. 4023 (PAE) (JLC), 2012 WL 676350, at *2 (S.D.N.Y. Mar. 1, 2012). The evidence the plaintiff submits must be admissible. See Poulos v. City of New York, No. 14 Civ. 3023 (LTS) (BCM), 2018 WL 3750508, at *2 (S.D.N.Y. July 13, 2018), adopted by, 2018 WL 3745661 (S.D.N.Y. Aug. 6, 2018); see also House v. Kent Worldwide Mach. Works, Inc., 359 F. App'x 206, 207 (2d Cir. 2010) (summary order) ("[D]amages must be based on admissible evidence."). If the documents the plaintiff has submitted provide a "sufficient basis from which to evaluate the fairness of" the requested damages, the Court need not conduct an evidentiary hearing. Fustok v. ContiCommodity Servs. Inc., 873 F.2d 38, 40 (2d Cir. 1989); see Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997) (noting that a court may determine appropriate damages based on affidavits and documentary evidence "as long as [the court has] ensured that there [is] a basis for the damages specified in the default judgment").

With respect to claims for unpaid wages, when the employer's payroll records are inaccurate or incomplete, "an employee has carried out his [or her] burden if he [or she] proves" enough for the court to make an "inference" that he or she "has in fact performed work for which he was improperly compensated and if he [or she] produces sufficient evidence to show the amount and extent of that work[.]" Kuebel v. Black & Decker Inc., 643 F.3d 352, 362 (2d Cir. 2011).  The Court may credit a plaintiff's "recollections regarding [her] hours and pay in conducting [the] inquest." Coley v. Vannguard Urban Improvement Ass'n, Inc., No. 12 Civ. 5565 (PKC) (RER), 2018 WL 1513628, at *7 (E.D.N.Y. Mar. 27, 2018), as amended, (Mar. 29, 2018).  The Court "must ensure that [his] approximations and estimates are reasonable and appropriate." Id.  Ultimately, the default judgment the Court enters "must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c); see Silge v. Merz, 510 F.3d 157, 160 (2d Cir. 2007) (limiting damages to those specified in demand in complaint "ensures that a defendant who is considering default can look at the damages clause, satisfy himself that he is willing to suffer judgment in that amount, and then default without the need to hire a lawyer"); Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC, No. 16 Civ. 1318 (GBD) (BCM), 2018 WL 4760345, at *1 (S.D.N.Y. Sept. 28, 2018) (holding that plaintiff could not recover damages for unalleged claims against defaulted defendant).

## B.  **Default Judgment**

In accordance with the two-step process in Rule 55, the Clerk of the Court entered a certificate of default as to both Defendants, and Judge Schofield entered the Default Judgment.  (ECF Nos. 53; 67).  In the Default Judgment, Judge Schofield determined that Hernandez's allegations in the Amended Complaint "sufficiently pleads" his claims under the

FLSA, NYLL, and WTPA, such that Defendants' liability under these statutes has been established. (ECF No. 67 at 2).

Considering the relevant factors set forth above, the Court first finds, based on Defendants' failure to submit any written reply to the Proposed Findings after having been properly served, that their default was willful. See Indymac Bank, F.S.B. v. Nat'l Settlement Agency, Inc., No. 07 Civ. 6865 (LTS) (GWG), 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007) (finding that a failure to respond to a complaint and subsequent motion for default judgment "indicate[s] willful conduct"). Second, delaying entry of a default judgment might prejudice Hernandez. See Inga v. Nesama Food Corp., No. 20 Civ. 909 (ALC) (SLC), 2021 WL 3624666, at *6 (S.D.N.Y. July 30, 2021) (finding that FLSA plaintiff would "be prejudiced in the absence of a default judgment, not only by the delay in resolving this action, but by his inability to recover from another source for the lost wages and other losses he sustained while working for Defendants"), adopted by, 2021 WL 3617191 (S.D.N.Y. Aug. 16, 2021). Third, Defendants have failed to respond to the Court's orders to appear and defend in this action. Thus, because the requirements of Rule 55 are satisfied and the relevant factors weigh in Hernandez's favor, entry of default judgment fixing the award of damages to Hernandez is proper.[4]

---

[4] The Court also observes that: (i) because Hernandez sues in part under the FLSA, federal subject matter exists under 28 U.S.C. § 1331 (ECF No. 39 ¶¶ 12–13); (ii) it has personal jurisdiction over Defendants, who are located in this District and were properly served (ECF Nos. 39 ¶¶ 4–5, 26; 10; 44–46; 72-1 ¶ 2); and (iii) venue is proper in this District under 28 U.S.C. §§ 1391(b)(1) and (2) because Lake Ave is located in this District and the events giving rise to Hernandez's claims occurred here (ECF Nos. 39 ¶¶ 4, 15; 72-1 ¶ 2).

### C. **Calculation of Damages**

#### 1. **Evidentiary Basis**

As a threshold matter, the Court must determine whether Hernandez has provided sufficient evidence to support his claim for damages. See Transatlantic Marine, 109 F.3d at 111; Bleecker v. Zetian Sys., Inc., No. 12 Civ. 2151 (DLC), 2013 WL 5951162, at *6 (S.D.N.Y. Nov. 1, 2013). With his Proposed Findings, Hernandez submitted his Affidavit, in which he attests to the dates and circumstances of his employment. (ECF No. 72-1). In addition, he previously filed and served on Defendants the Second Calculation. (ECF Nos. 63-1; 64). Despite warnings, Defendants have not responded to the Court's orders, the Proposed Findings, or the Second Calculation, and have not provided any contrary evidence. (ECF Nos. 68; 70). The Court finds that Hernandez has met his evidentiary burden of proving damages, and that an in-person hearing is unnecessary because his submissions, combined with Defendants' admissions resulting from their default, constitute a sufficient basis from which to evaluate the fairness of his damages request. See Fustok, 873 F.2d at 40; see also Bos. Sci. Corp. v. N.Y. Ctr. for Specialty Surgery, No. 14 Civ. 6170 (RRM), 2015 WL 13227994, at *3 (E.D.N.Y. Aug. 31, 2015) (same), adopted by, 2016 WL 8711378 (E.D.N.Y. Jan. 29, 2016).

#### 2. **Straight Time Wages**

The FLSA and NYLL require an employer to pay at least the statutory minimum wage for each hour an employee works in a work week ("Straight Time Wages"). See 29 U.S.C. § 206(a); 12 N.Y.C.R.R. § 146-1.1(a). The FLSA requires employers to pay employees at least the federal minimum wage for every hour worked, see 29 U.S.C. § 206, or the state minimum wage, if it is greater. See 29 U.S.C. § 218(a). "[I]n the absence of a rebuttal by defendants, plaintiffs'

recollection and estimates of hours worked are presumed to be correct." Liu v. Jen Chu Fashion Corp., No. 00 Civ. 4221 (RJH) (AJP), 2004 WL 33412, at *3 (S.D.N.Y. Jan. 7, 2004).

Under both the FLSA and NYLL, "all of the time worked during a continuous workday is compensable, save for bona fide meal breaks." Hart v. Rick's Cabaret Int'l Inc., 60 F. Supp. 3d 447, 475 n.15 (S.D.N.Y. 2014) (citing IBP, Inc. v. Alvarez, 546 U.S. 21, 37 (2005)). A meal break is "bona fide" when the employee is "completely relieved from duty for the purposes of eating regular meals." 29 C.F.R. § 785.19(a); see Cazares v. 2898 Bagel & Bakery Corp., No. 18 Civ. 5953 (AJN) (DF), 2022 WL 1410677, at *19 n.12 (S.D.N.Y. Apr. 7, 2022), adopted by, 2022 WL 1406203 (S.D.N.Y. May 4, 2022). Where the plaintiff asserts that "he did not receive any meal or rest breaks[,]" "all of [his] time worked [will be] compensable." Villanueva v. 179 Third Ave. Rest. Inc., 500 F. Supp. 3d 219, 235 (S.D.N.Y. 2020), adopted by, No. 16 Civ. 8782 (AJN) (RWL), 2021 WL 2139441 (S.D.N.Y. May 26, 2021).

The NYLL requires certain employers to provide: (1) a meal period of at least thirty minutes for employees who work a shift of more than six hours over the period encompassing 11:00 a.m. to 2:00 p.m., within that period; (2) an additional 20-minute period between 5:00 p.m. and 7:00 p.m. for employees whose shift started before 11:00 a.m. and continued later than 7:00 p.m.; and/or (3) a 45-minute meal period at a time midway between the beginning and end of the shift for employees whose shift lasts more than six (6) hours and starts between 1:00 p.m. and 6:00 a.m. See NYLL § 162(2)-(4); see also Victor v. Sam's Deli Grocery Corp., No. 19 Civ. 2965 (SLC), 2022 WL 3656312, at *9 (S.D.N.Y. Aug. 25, 2022) (citing NYLL § 162(2)-(4)).

Hernandez alleges, and Defendants have admitted by their default, that he did not receive any breaks of any kind during his shifts. (ECF Nos. 39 ¶ 49; 72-1 ¶ 21). Thus, "all of [his] time

worked [will be] compensable." Villanueva, 500 F. Supp. 3d at 235; accord Victor, 2022 WL 3656312, at *9.

Employers may compensate tipped employees at a lower hourly rate by crediting a portion of their tips against the minimum wage. See 29 U.S.C. § 203(m)(2)(A)–(B); 12 N.Y.C.R.R. § 146-1.3(b); Andrade v. First Ave. Rest. Ltd., No. 14 Civ. 8268 (JPO) (AJP), 2016 WL 3141567, at *4 (S.D.N.Y. June 3, 2016), adopted by, 2016 WL 3948101 (S.D.N.Y. July 19, 2016); see also Zhang v. Hiro Sushi at Ollies, Inc., No. 17 Civ. 7066 (JPC), 2022 WL 2668263, at *8 (S.D.N.Y. July 11, 2022). "To be eligible to take a tip credit, however, the employer must satisfy certain prerequisites." Kim v. Kum Gang, Inc., No. 12 Civ. 6344 (MHD), 2015 WL 2222438, at *23 (S.D.N.Y. Mar. 19, 2015). These prerequisites include the requirement that the employer notify the employee, before the employment begins, "of its intention to include tip income when calculating wages actually paid for minimum wages purposes." Jin M. Cao v. Wu Liang Ye Lexington Rest., Inc., No. 08 Civ. 3725 (DC), 2010 WL 4159391, at *2 (S.D.N.Y. Sept. 30, 2010). The employer bears the burden of proving that this notice was given. See Reyes v. Café Cousina Rest. Inc., No. 18 Civ. 1873 (PAE) (DF), 2019 WL 5722475, at *5 (S.D.N.Y. Aug. 27, 2019).

The NYLL also allows an employer to pay tipped food service workers a lower minimum wage under certain conditions. See NYLL § 652(4). "An employer may receive the benefit of this tip credit only if the employer provides to each employee a statement with every payment of wages listing allowances claimed as part of the minimum wage and maintains and preserves for not less than six years weekly payroll records which shall show for each employee allowances claimed as part of the minimum wage[.]" Cao, 2010 WL 4159391, at *2 (quoting Padilla v. Manlapaz, 643 F. Supp. 2d 302, 309–10 (E.D.N.Y. 2009)) (internal quotation marks and alterations

omitted); see 12 N.Y.C.R.R. §§ 146-1.3, 146-2.2.  Under both the FLSA and the NYLL, the notice must be sufficient to apprise the employee of the tip credit provision and the fact that the employer intends to take the credit as to the employee's wages.  See Café Cousina, 2019 WL 5722475, at *5; Salinas v. Starjem Rest. Corp., 123 F. Supp. 3d 442, 467 (S.D.N.Y. 2015) (finding generic FLSA posters to be insufficient notice).

The Court finds that Defendants do not meet the requirements for taking a tip credit against Hernandez's wages.  Hernandez alleges, and Defendants have admitted by their default, that they never notified him that tips would be included as an offset to his wages.  (ECF No. 39 ¶ 61; see ECF No. 72-1 ¶ 16).  Because Defendants have not met the notice requirements of the FLSA and NYLL, they are therefore not entitled to any tip credit against the minimum wage.  See Victor, 2022 WL 2656312, at *10 (denying tip credit); Agureyev v. H.K. Second Ave. Rest. Inc., No. 17 Civ. 7336 (SLC), 2021 WL 847977, at *7 (S.D.N.Y. Mar. 5, 2021); Schalaudek, 2017 WL 729544, at *6-7.  "Because Defendants are not entitled to any tip credit, [they] were required to pay [Hernandez] full minimum wage, rather than the lower minimum wage for tipped workers." Lopez v. Emerald Staffing Inc., No. 18 Civ. 2788 (SLC), 2020 WL 915821, at *9 (S.D.N.Y. Feb. 26, 2020).

Although Hernandez's Amended Complaint and Affidavit broadly contend that Defendants failed to pay him the applicable hourly minimum wage, he does not specify during which periods he was paid less than the minimum wage.  (ECF Nos. 39 ¶ 77; 72-1 ¶ 19; see ECF No. 67 at 2).  After reviewing the Affidavit and Second Calculation, and conducting an independent calculation, the Court has determined that Hernandez paid less than the minimum wage during the entire employment period:

| Time Period | Hernandez's Straight Time Wages | Statutory Minimum Wage[5] | Difference |
|---|---|---|---|
| Feb. 1, 2020 – Dec, 30, 2020 | $12.00 | $13.00 | ($1.00) |
| Dec. 31, 2020 – July 10, 2021 | $12.00 | $14.00 | ($2.00) |

As discussed above, Defendants were required to pay Hernandez Straight Time Wages at New York's statutory minimum wage for the first 40 hours that he worked each week, but did not do so. Having reviewed the Second Calculation, I note that Hernandez has not broken out the amount of Straight Time Wages he seeks (ECF No. 63-1), but based on my own independent calculation respectfully recommend that he be awarded Straight Time Wages as follows:

| Time Period | # Weeks | Underpayment per Hour | Underpaid Straight Time Hours[6] | Straight Time Wages Awarded |
|---|---|---|---|---|
| Feb. 1, 2020 – Dec. 30, 2020 | 48 | $1.00 | 1920 | $1,920.00 |
| Dec. 31, 2020 – July 10, 2021 | 27 | $2.00 | 1080 | $2,160.00 |
| **Total** | | | | **$4,080.00** |

### 3. Overtime Wages

Both the FLSA and the NYLL require an employer to pay an overtime rate of one and one-half times the employee's "regular rate" of pay. 29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 142-2.2. The Court calculates the appropriate overtime wages "by multiplying [Hernandez's] regular hourly rate (or the minimum wage rate, if his regular hourly rate falls below the minimum wage) by one and one-half," then by multiplying that rate "by the number of hours in excess of forty hours [he] worked each week." Rosendo v. Everbrighten Inc., No. 13 Civ. 7256 (JGK) (FM), 2015

---

[5] Yonkers is in Westchester County, so the "downstate" minimum wage rates apply. See NYLL § 652(b).
[6] 40 hours x Weeks in pay period.

WL 1600057, at *4 (S.D.N.Y. Apr. 7, 2015).  Here, Hernandez claims that Defendants paid him his regular hourly rate ($12.00) for all hours worked, including those over 40 hours per week. (ECF No. 39 ¶¶ 42, 50; 72-1 ¶ 19).  He is therefore entitled to recover the overtime rate, i.e., one-and-half times the applicable minimum wage, less the $12.00 he received, for each overtime hour worked.

Again, Hernandez's Second Calculation does not separate his claims unpaid Straight Time Wages from his claimed overtime wages, so the Court has done an independent calculation and recommends that he be awarded overtime wages in the amounts below:

| Time Period | # Weeks | Overtime Hours Per Week | Total Unpaid Overtime Hours | Applicable Minimum Wage | Overtime Rate (Minimum Wage * 1.5) | Overtime Wages Awarded[7] |
|---|---|---|---|---|---|---|
| Feb. 1, 2020 – Dec. 30, 2020 | 48 | 20 | 960 | $13.00 | $19.50 | $7,200.00 |
| Dec. 31, 2020 – July 10, 2021 | 27 | 20 | 540 | $14.00 | $21.00 | $4,860.00 |
| **Total** | | | | | | **$12,060.00** |

### 4.  **Spread-of-Hours Wages**

Under the NYLL, employers must pay covered employees one extra hour of compensation, at the basic minimum wage rate, for each day on which they worked more than ten hours.  12 N.Y.C.R.R. § 142-2.4(a).  Spread of hours is defined as "the interval between the beginning and end of an employee's workday" and "includes working time plus time off for meals plus intervals off duty."  Id. § 142-2.18.  "[T]he spread of hours regulations 'apply to all employees in restaurants . . . regardless of a given employee's regular rate of pay.'"  Andrade, 2016 WL

---

[7] Overtime Hours x (Overtime Rate - $12.00).

3141567, at *4. An employee may recover spread-of-hours wages in addition to federal and state overtime wages. See Yang v. ACBL Corp., 427 F. Supp. 2d 327, 339–41 (S.D.N.Y. 2005).

Hernandez alleges in the Amended Complaint that Defendants did not pay him an additional hour's pay at the minimum wage rate for each day his spread of hours exceeded ten hours. (ECF No. 39 ¶¶ 80–81). In his Affidavit, he attests that he always worked twelve hours per day. (ECF No. 72-1 ¶ 20). To determine Hernandez's spread-of-hours damages, the Court multiplies the number of days per week that he worked over ten hours, the statutory minimum wage, and the number of weeks in the pay period. See Andrade, 2016 WL 3141567, at *6. Using this formula, I respectfully recommend that Hernandez be awarded spread-of-hours damages in the following amount:

| Time Period | # Weeks in Period | Spread-of-Hours Days Per Week | Statutory Minimum Wage | Spread-of-Hours Damages |
|---|---|---|---|---|
| Feb. 1, 2020 – Dec. 30, 2020 | 48 | 5 | $13.00 | $3,120.00 |
| Dec. 31, 2020 – July 10, 2021 | 27 | 5 | $14.00 | $1,890.00 |
| **Total** | | | | **$5,010.00** |

### 5. Liquidated Damages

Under the FLSA, "a plaintiff who demonstrates that he was improperly denied either minimum or overtime wages may recover, in addition to reimbursement of these unpaid wages, an 'additional equal amount as liquidated damages.'" Xochimitl v. Pita Grill of Hell's Kitchen, Inc., No. 14 Civ. 10234 (JGK) (JLC), 2016 WL 4704917, at *15 (S.D.N.Y. Sept. 8, 2016) (quoting 29 U.S.C. § 216(b)), adopted by, 2016 WL 6879258 (S.D.N.Y. Nov. 21, 2016). "[W]here the employer shows that, despite its failure to pay appropriate wages, it acted in subjective 'good faith' with objectively 'reasonable grounds' for believing that its acts or omissions did not violate

the FLSA," the Court has the discretion to deny liquidated damages.  Barfield, 537 F.3d at 150 (quoting 29 U.S.C. § 260).  This burden is "a difficult one," id. (quoting Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 142 (2d Cir. 1999)), and where "defendants never made this showing in light of their default, they have not rebutted the presumption in favor of a liquidated damages award." Guaman v. J & C Top Fashion, Inc., No. 14 Civ. 8143 (GBD) (GWG), 2016 WL 791230, at *7 (S.D.N.Y. Feb. 22, 2016).  A plaintiff who "is entitled to liquidated damages under the FLSA, but has been awarded wage and overtime damages pursuant to the NYLL because state law provided the greater relief" is entitled to FLSA liquidated damages "based on 'the amount of actual damages that would have been awarded had the federal minimum wage rate applied.'"  Kernes v. Glob. Structures, LLC, No. 15 Civ. 659 (CM) (DF), 2016 WL 880199, at *4 (S.D.N.Y. Feb. 9, 2016) (quoting Angamarca v. Pita Grill 7 Inc., No. 11 Civ. 7777 (JGK) (JLC), 2012 WL 3578781, at *7 (S.D.N.Y. Aug. 2, 2012)).

The NYLL also authorizes liquidated damages.  See Xochimitl, 2016 WL 4704917, at *15. Effective November 24, 2009, "an employee was entitled to NYLL liquidated damages 'unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law.'"  Id. (quoting NYLL § 198(1-a)).  "Courts deem defendants' actions willful where they have defaulted, see e.g., Angamarca, 2012 WL 3578781, at *8, and, consequently, such defaulting defendants will have '[o]bviously . . . made no showing of 'good faith.'"  Xochimitl, 2016 WL 4704917, at *15 (quoting Guaman, 2016 WL 791230, at *7).  Effective April 9, 2011, the liquidated damages award under the NYLL is 100% of the amount of unpaid wages.  NYLL §§ 198(1-a), 663(1).

The Second Circuit precludes a plaintiff from recovering liquidated damages under both the FLSA and the NYLL.  See Chowdhury v. Hamza Express Food Corp., 666 F. App'x 59, 60 (2d Cir. 2016); Mondragon, 2019 WL 2551536, at *11.  A plaintiff should recover "under the statute that provides the greatest relief."  Almanzar v. 1342 St. Nicholas Ave. Rest. Corp., No. 14 Civ. 7850 (VEC) (DF), 2016 WL 8650464, at *9 (S.D.N.Y. Nov. 7, 2016).  The NYLL allows for prejudgment interest in addition to liquidated damages, see NYLL § 198(1-a), but the FLSA does not.  See Valdez v. H & S Rest. Operations, Inc., No. 14 Civ. 4701 (SLT) (MDG), 2016 WL 3079028, at *6 (E.D.N.Y. Mar. 29, 2016), adopted by 2016 WL 3087053 (E.D.N.Y. May 27, 2016).  The NYLL, therefore, provides greater relief.  See Mondragon, 2019 WL 2551536, at *11.

Having defaulted, Defendants have not carried their burden of demonstrating good faith under the NYLL, see Mondragon, 2019 WL 2551536, at *11, and therefore, Hernandez is entitled to liquidated damages equivalent to 100% of his unpaid wages.  See Victor, 2022 WL 3656312, at *11-12 (awarding liquidated damages of 100% of unpaid wages where defendants had defaulted); Suriel, 2022 WL 1750232, at *16 (same); Schalaudek, 2017 WL 729544, at *10 (same).

Liquidated damages are calculated as "one hundred percent of the total amount of wages found to be due . . ."  NYLL § 198(1-a).  Here, that is the sum of Hernandez's unpaid (i) Straight Time Wages ($4,080.00); (ii) overtime wages ($12,060.00); and (iii) spread-of-hours wages ($5,010.00), which is $21,150.00.  See Agureyev, 2021 WL 847977, at *10.

### 6.  Statutory Wage Notices and Statements

"The [WTPA], which became effective April 9, 2011, required [Defendants] to provide [Hernandez], at the time of hiring, with a notice containing, inter alia, the rate and frequency of

[his] pay, NYLL § 195(1), and to furnish [him] with a written statement with each payment of wages, listing, inter alia, the dates covered by the payment, the regular rate of pay, the overtime rate, and the number of hours worked. NYLL § 195(3)."  Mondragon, 2019 WL 2551536, at *12.

Hernandez alleges that Defendants failed to provide him with wage notices when he was hired and failed to furnish him with weekly wage statements.  (ECF Nos. 39 ¶¶ 51-52, 59, 84, 87; 72-1 ¶¶ 12, 15–16, 22).  While Hernandez has demonstrated that Defendants failed to comply with the WTPA, NYLL §§ 195(1) and 195(3), he lacks standing to maintain these claims.  "Article III standing requires plaintiffs to show (1) an 'injury in fact,' (2) a 'causal connection' between that injury and the conduct at issue, and (3) a likelihood 'that the injury will be redressed by a favorable decision.'"  Maddox v. Bank of N.Y. Mellon Tr. Co., N.A., 19 F.4th 58, 62 (2d Cir. 2021) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992)).  To demonstrate an injury in fact, a plaintiff "must show the invasion of a [1] legally protected interest that is [2] concrete and [3] particularized and [4] actual or imminent, not conjectural or hypothetical."  Id. (quoting Strubel v. Comenity Bank, 842 F.3d 181, 188) (2d Cir. 2016)).  For an "informational injury" resulting from the failure to receive required information to give rise to standing, see TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2214 (2021), a plaintiff must allege "downstream consequences" resulting from the failure to receive the information that demonstrate an interest in using the information "beyond bringing the lawsuit."  Harty v. W. Point Realty, Inc., 28 F.4f 435, 444 (2d Cir. 2022).

Here, Hernandez does not allege any facts describing an "injury sufficient to confer standing and [has] not demonstrated how [his] lack of notice resulted in an injury greater than Defendants'" wage violations.  Gao v. Umi Sushi, No. 18 Civ. 6439 (ALC) (SN), 2023 WL 2118203, at *7 (S.D.N.Y. Jan. 31, 2023), adopted by, 2023 WL 2118080 (S.D.N.Y. Feb. 17, 2023).  Further,

he has not identified any informational injury giving rise to consequences other than this lawsuit.

Id.  Therefore, notwithstanding the language of the Default Judgment, following the decisions of other courts in this District, I therefore respectfully recommend that Hernandez's request for statutory damages be denied.  Id.; accord Reyes v. Coppola's Tuscan Grill, LLC, No. 21 Civ. 7040 (AT) (SN), 2023 WL 4303943, at *6 (S.D.N.Y. June 13, 2023), adopted by, 2023 WL 4304676 (S.D.N.Y. June 30, 2023); Ramirez v. Urion Constr. LLC, No. 22 Civ. 3342 (LGS) (RWL), 2023 WL 3570347, at *7-8 (S.D.N.Y. Apr. 28, 2023), adopted by, 2023 WL 3570639, at *8 (S.D.N.Y. May 19, 2023); Belliard v. Tarnovsky, No. 20 Civ. 1055 (GBD) (KHP), 2023 WL 3004963, at *6 (S.D.N.Y. Mar. 6, 2023), adopted by, 2023 WL 3304723 (S.D.N.Y. May 8, 2023); Hernandez v. 99 Thai Playground LLC, No. 19 Civ. 1257 (ALC) (SN), 2022 WL 18539303, at *7 (S.D.N.Y. Nov. 28, 2022), adopted by, 2023 WL 1400626 (S.D.N.Y. Jan. 31, 2023); Pastrana v. Mr. Taco LLC, No. 18 Civ. 9374 (GBD) (SN), 2022 WL 16857111, at *7 (S.D.N.Y. Sept. 23, 2022), adopted by, 2022 WL 16857107 (S.D.N.Y. Nov. 10, 2022).

### 7.  Prejudgment Interest

In the Amended Complaint, Hernandez sought prejudgment interest on his compensatory damages, and while, in the Second Calculation, he sets forth no calculation of prejudgment interest, in the Proposed Findings, he asks that prejudgment interest "be computed from the median of each relevant period to the date of judgment."  (Compare ECF No. 39 at 17 ¶ (q) with ECF No. 63-1 and 72 ¶ 40).

Although prejudgment interest is not awarded where FLSA liquidated damages are awarded, "prejudgment interest is still appropriate where a plaintiff is awarded liquidated damages under the NYLL."  Morales v. MwBronx, Inc., No. 15 Civ. 6296 (TPG), 2016 WL 4084159,

at *10 (S.D.N.Y. Aug. 1, 2016).   "Prejudgment interest applies only to the amount of compensatory damages, and excludes the amount of liquidated damages."   Maldonado v. La Nueva Rampa, Inc., No. 10 Civ. 8195 (LLS) (JLC), 2012 WL 1669341, at *11 (S.D.N.Y. May 14, 2012), adopted by, Order dated Aug. 9, 2012 (ECF No. 20).

Under New York law, prejudgment interest is awarded at the rate of nine percent per year.   N.Y. C.P.L.R. § 5004.   For damages occurring "at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date."   N.Y. C.P.L.R. § 5001.   "Simple prejudgment interest is calculated from a singular, midpoint date . . . [and] by multiplying the principal by the interest rate by the time period—from a singular, midpoint date—up until and including the date judgment is entered." Maldonado, 2012 WL 1663941, at *11.   The midpoint of a plaintiff's employment is often used as the date from which to calculate prejudgment interest in wage-and-hour cases.   See Suriel, 2022 WL 1750232, at *17; Mondragon, 2019 WL 2551536, at *11.

Despite the absence of a prejudgment interest calculation in the Second Calculation, Hernandez's description of the calculation in the Proposed Findings is largely consistent with the methodology in the cases described above.   See e.g., Mondragon, 2019 WL 2551536, at *11 ("Where [] damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date.") (quoting N.Y. C.P.L.R. 5001(b)).   Hernandez's employment lasted from February 1, 2020 until July 10, 2021—a total of 525 days—and the midpoint of his employment was October 20, 2020 (262 days after February 1, 2020).   Accordingly, I respectfully recommend an award of prejudgment interest at a rate of nine percent per year calculated from October 20, 2020 through

the date of judgment.  See Ortega v. Matilda Gourmet Deli Inc., No. 21 Civ. 10212 (LGS), 2023 WL
1861279, at *1 (S.D.N.Y. Feb. 9, 2023) (awarding prejudgment interest from "the approximate
midpoint of [the plaintiff's] employment . . . until the date of judgment").

### 8.  Post-judgment interest

Hernandez also seeks post-judgment interest.  (ECF No. 39 at 17 ¶ (q)).  The applicable
federal statute provides that "[i]nterest shall be allowed on any money judgment in a civil case
recovered in a district court . . . calculated from the date of entry of the judgment, at a rate equal
to the weekly average 1-year constant maturity Treasury yield, as published by the Board of
Governors of the Federal Reserve System, for the calendar week preceding . . . the date of the
judgment."  28 U.S.C. § 1961.  The Second Circuit has explained that an award of post-judgment
interest is mandatory.  See Schipani v. McLeod, 541 F.3d 158, 165 (2d Cir. 2008); see also Suriel,
2022 WL 1750232, at *17 (awarding post-judgment interest).  Given the mandatory nature of
post-judgment interest, I respectfully recommend that Hernandez be awarded post-judgment
interest in an amount consistent with 28 U.S.C. § 1961.

### 9.  Attorneys' Fees

Hernandez seeks an award of attorneys' fees in the amount of $6,384.00.
(ECF Nos. 55 ¶ 17; 63 at 2).  The NYLL permits a successful plaintiff to recover reasonable
attorneys' fees.  NYLL §§ 198, 663.  "Whether an attorneys' fee award is reasonable is within the
discretion of the court."  De Jesus v. Sea Crest Diner-Rest., No. 17 Civ. 275 (ADS) (SIL), 2018 WL
3742778, at *11 (E.D.N.Y. May 7, 2018) (citing De Jesus Galindo v. BLL Rest. Corp., No. 15 Civ.
5885 (HBP), 2018 WL 1684412, at *3 (S.D.N.Y. Apr. 6, 2018)).  To determine a "presumptively
reasonable fee," the Court multiples the hours counsel reasonably spent on the litigation by a

reasonable hourly rate. <u>Millea v. Metro-N. R. Co.</u>, 658 F.3d 154, 166 (2d Cir. 2011). "The presumptively reasonable fee boils down to what a reasonable paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." <u>Simmons v. N.Y.C. Transit Auth.</u> 575 F.3d 170, 174 (2d Cir. 2009).

### a. Reasonable Hourly Rate

Hernandez was represented by Lina Stillman ("Stillman"), of Stillman Legal, P.C. (ECF No. 55 ¶ 1). Stillman recorded her time at an hourly rate of $350. (ECF No. 55-6). Stillman graduated from Rutgers School of Law in 2010, since which time she has practiced labor and employment law, specifically wage and hour litigation, with three law firms, including her own. (ECF No. 55 ¶ 16(h)(i)).

To determine whether an hourly rate is reasonable, the Second Circuit has instructed district courts to "apply the prevailing rate within the district for similar services by lawyers of comparable experience and skill." <u>Galeana v. Lemongrass on B'way Corp.</u>, 120 F. Supp. 3d 306, 323 (S.D.N.Y. 2014) (citing <u>Gierlinger v. Gleason</u>, 160 F.3d 858, 882 (2d Cir. 1998)). A court may also adjust the hourly rate to account for case-specific variables such as:

> [i] the time and labor required; [ii] the novelty and difficulty of the questions; [iii] the skill requisite to perform the legal service properly; [iv] the preclusion of employment by the attorney due to acceptance of the case; [v] the customary fee; [vi] whether the fee is fixed or contingent; [vii] time limitations imposed by the client or the circumstances; [viii] the amount involved and the results obtained; [ix] the experience, reputation, and ability of the attorneys; [x] the "undesirability" of the case; [xi] the nature and length of the professional relationship with the client; and [xii] awards in similar cases.

<u>Gamero v. Koodo Sushi Corp.</u>, 328 F. Supp. 3d 165, 173 (S.D.N.Y. 2018) (quoting <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 430 n.3 (1983)).

In this district, courts generally award experienced wage-and-hour attorneys between $300.00 to $400.00 per hour.  See Surdu v. Madison Glob., LLC, No. 15 Civ. 6567 (HBP), 2018 WL 1474379, at *10 (S.D.N.Y. Mar. 23, 2018) (collecting cases regarding litigators with one or more decades of experience); see also Pastor v. Alice Cleaners, Inc., No. 16 Civ. 7264 (JLC), 2017 WL 5625556, at *7–8 (S.D.N.Y. Nov. 21, 2017) (noting fees between $250 and $450 for experienced litigators in wage-and-hour cases in this district); but see Williams v. Epic Sec. Corp., No. 15 Civ. 05610 (SDA), 2019 WL 1322384, at *3 (S.D.N.Y. Mar. 25, 2019) (awarding $600 per hour to lead attorney with 32 years of experience and $350 per hour to junior partner with 11 years of non-wage-and-hour experience).

Stillman is an experienced employment attorney who has been litigating wage-and-hour cases for over ten years.  (ECF No. 55 ¶ 16(h)(i)).  Other courts in this District have also recently deemed $350 to be a reasonable hourly rate for Stillman's representation in FLSA cases. See Ortega v. Matilda Gourmet Deli Inc., No. 21 Civ. 10212 (LGS) (KHP), 2023 WL 2393921, at *8 (S.D.N.Y. Jan. 19, 2023), modified in part on other grounds, 2023 WL 1861279 (S.D.N.Y. Feb. 9, 2023); Navarez v. Black Label Salon 25 Corp., No. 20 Civ. 4465 (ER), 2021 WL 1118383, at *2 (S.D.N.Y. Feb. 1, 2021).  I respectfully recommend that Stillman be awarded the requested hourly rate of $350.

### b.  Reasonable Hours Expended

Stillman expended 15.6 hours on Hernandez's matter.  (ECF No. 55-6).  To determine the reasonable number of hours required by a case, the critical inquiry is "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992).  Courts must perform "a conscientious and

detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994). "If the Court finds that some of the claimed hours are 'excessive, redundant or otherwise unnecessary,' it may reduce the number of reasonable hours accordingly." Bumble & Bumble, LLC v. Pro's Choice Beauty Care, Inc., No. 14 Civ. 6911 (VEC) (JLC), 2016 WL 658310, at *9 (S.D.N.Y. Feb. 17, 2016), adopted by, 2016 WL 1717215 (S.D.N.Y. Apr. 27, 2016) (quoting Hensley, 461 U.S. at 434).

I have examined the contemporaneous billing records for Hernandez's matter, including the hours expended, dates of work, and brief descriptions of the tasks Stillman performed. (See ECF No. 55-6). I find that the hours she expended were reasonable and not "excessive, redundant, or otherwise unnecessary[.]" Hensley, 461 U.S. at 434. Accordingly, I respectfully recommend an award of attorneys' fees in the amounts below:

| Timekeeper | Requested Rate | Awarded Rate | Reasonable Hours | Fees Awarded |
|---|---|---|---|---|
| Stillman | $350.00 | $350.00 | 15.6 | $5,460.00[8] |

### 10. Costs

An employee who prevails in a wage-and-hour action is entitled to recover costs. See 29 U.S.C. § 216(b); NYLL § 663(1). Recoverable costs are "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998). Hernandez, however, has not made a request for costs, nor has he submitted any "invoices or receipts to substantiate" any possible request for costs.

---

[8] Hernandez's submissions fail to substantiate the requested amount of attorneys' fees, $6,384.00. (Compare ECF No. 55 ¶ 17 with ECF No. 55-6 at 2).

Khotovitskaya v. Shimunov, No. 18 Civ. 7303 (NGG) (CLP), 2021 WL 868781, at *2 (E.D.N.Y. Mar. 9, 2021) (denying costs where party failed to submit documentation substantiating the amounts reflected in attorney billing records); see Suriel, 2022 WL 1750232, at *18 (declining to award costs for unsubstantiated amounts listed only in attorney billing record); Sanchez, 2018 WL 4502008, at *17 (noting that adequate substantiation is required for award of costs). Accordingly, I respectfully recommend that no costs be awarded.

## IV. <u>CONCLUSION</u>

For the reasons set forth above, I respectfully recommend that Hernandez be awarded: (1) compensatory damages in the amount of $21,150.00, consisting of (a) $4,080.00 in Straight Time Wages, (b) $12,060.00 in overtime wages, (c) $5,010.00 in spread-of-hours damages; (2) liquidated damages in the amount of $21,150.00; (3) prejudgment interest on Hernandez's damages for unpaid minimum, overtime, and spread-of-hours wages (i.e., $21,150.00) at a rate of nine percent per annum from the period of October 20, 2020 to the date of entry of judgment; (4) post-judgment interest pursuant to 28 U.S.C. § 1961; and (5) attorneys' fees in the amount of $5,460.00. I also respectfully recommend that neither statutory damages under the WTPA nor costs be awarded.

Hernandez shall serve a copy of this Report and Recommendation on Defendants and, by **August 7, 2023**, file proof of service on the docket.

Dated:     New York, New York
           August 3, 2023

_____
**SARAH L. CAVE**
**United States Magistrate Judge**

*                    *                    *

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.  See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)).  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b)(2).  Such objections, and any response to objections, shall be filed with the Clerk of the Court.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b).  Any requests for an extension of time for filing objections must be addressed to Judge Schofield.

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.**  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).